# EXHIBIT A

In the Matter of the Arbitration Between:

| | |
|---|---|
| **CONTINENTAL INSURANCE COMPANY,** as successor in interest to Continental Reinsurance Corporation )<br><br>Petitioner, )<br><br>**AXA VERSICHERUNG AG,** as successor to Colonia Versicherungs )<br><br>Respondent. ) | Arbitration Panel:<br>  Paul E. Dassenko, Umpire<br>  David A. Thirkill, Arbitrator<br>  Paul C. Thomson, III, Arbitrator |

## FINAL AWARD

Following receipt of briefs from both parties, the Panel heard Oral Argument in New York City on June 20, 2018. After extensive discovery, and motion practice, the parties ultimately agreed that the matter could be resolved on the plain language of the contracts, and submitted this case to the Panel on that basis.

At the end of this arbitration, two issues remained for the Panel: 1) Does the contractual provision excluding inter-company reinsurance from amounts due relieve Respondent from its indemnity obligations under the Quota Share Retrocessional Agreement ("the Retro Agreement"); and 2) Does the appointment of a third-party claims administrator ("TPA") violate the "Sole Judge" language in Article XV of the Retro Agreement.

Background

The dispute in this arbitration arises from a retrocessional reinsurance agreement entered into between predecessors to the current parties, covering business ceded from 1978 through 1982. Several years after termination of the Retro Agreement, specifically in 1995, several Continental of New York companies, including Continental Re, were merged into CNA Corporation and, at some point thereafter, restructuring followed, including collapsing Continental Re, the original party to the Retro Agreement, into Continental Insurance Company. In 2010, given significant deterioration in their reserves for asbestos and pollution claims, certain CNA companies, including Petitioner, entered into a Loss Portfolio Transfer ("LPT") with National Indemnity Company ("NICO"). At the same time, the CNA companies entered into an Administrative Services Agreement ("ASA") with NICO affiliate, Resolute. The LPT covered certain CNA companies, including Petitioner, from losses arising out of asbestos and pollution claims. Resolute's responsibilities under the ASA included claims handling and litigation management for Petitioner's claims subject to the LPT.

1

Because of the NICO LPT, Respondent believes it is relieved from responsibility for losses retroceded to it from Petitioner, unless and until the LPT limit is exhausted. Respondent cites Section 2.1 of the LPT which says that Petitioner "shall cede to the Reinsurer (NICO) and the Reinsurer (NICO) shall reinsure 100% of all losses, liabilities and expenses included within the definition of Ultimate Net Loss paid by the Reinsured . . ." Respondent goes on to the definition of Ultimate Net Loss in Section 2.3 of the LPT which deducts Third Party Reinsurance from the amounts due under the LPT. Then Respondent points to the definition of Third Party Reinsurance Recoverables and the definition of Third Party Reinsurance both from Section I of the LPT, which excludes "reinsurance solely between or among CNA Affiliates . . ." After Petitioner became a covered entity under the NICO LPT, Respondent argues that all asbestos and pollution claims ceded by Continental Insurance Company to Continental Re must first be ceded to the LPT, because they are not third party reinsurance, and therefore not excluded from the LPT under Section 2.3.

The second defense raised by Respondent is that by appointing Resolute as a TPA, Petitioner has violated the "Sole Judge" language of Article XV in the Retro Agreement. Respondent argues that the delegation of claims responsibility to a TPA is prohibited by the "Sole Judge" language, and that Petitioner, and only Petitioner itself, must settle all claims with its cedents, prior to ceding to the Retro Agreement.

Findings of Fact by the Majority

The caption on this arbitration should settle the issue on Respondent's first defense. There is only one company at this stage, namely Continental Insurance Company, which cannot logically nor legally have any more intercompany reinsurance, as the intercompany reinsurer, Continental Re, has been collapsed into its cedent, Continental Insurance Company. All that is left is Petitioner's net liability from asbestos and pollution, which was clearly part of the liability contemplated at formation of the Retro Agreement. A majority of the Panel finds there is no requirement that asbestos and pollution losses first be ceded to the LPT with NICO. In ceding to Respondent, Petitioner, as successor to Continental Re, is bound to respect the contractual terms of the Retro Agreement and cede as though it were Continental Re, the original party to the Retro Agreement. The Panel finds that asbestos and pollution losses retroceded to Respondent under the Retro Agreement are third party reinsurance, and could not be anything but. Petitioner is entitled to cede to Respondent as a third-party its net asbestos and pollution liability, once accounted for as though Continental Re were still in existence so as to conform to the terms of the original transaction. Anything short of this outcome, would be a violation of the intent behind the Retro Agreement, and provide a windfall to Respondent. Respondent's suggested interpretation falls into the category of "hyper-technical" construction, which ultimately fails given the Panel's responsibility to apply custom and practice in this arbitration, but would also fail given the very practical reason that the entities were collapsed into one entity some time ago. Respondent has not shown how it has been prejudiced by this change in Petitioner's corporate structure, nor has any other reason been advanced as to why Petitioner's ceded losses are somehow inconsistent with Respondent's reasonable expectations at formation.

As for Respondent's second defense, the "Sole Judge" clause, the Panel finds no support for the proposition that this clause somehow forbids delegation of claims handling responsibilities. TPA's are and have been the norm for many lines of business, particularly lines of business that require systems or expertise that might be more readily available from a third party. This has been true for decades on business covered by reinsurance and retro agreements that have "Sole Judge" language. Frankly, this is the first time this Panel has ever heard the suggestion that somehow this language prevents delegation of claims handling responsibility. Respondent offers no evidence that at formation the two parties to the Retro Agreement somehow reached agreement on a non-traditional interpretation of "Sole Judge", hence there is no reason for this Panel to overturn decades of industry understanding on this language. As any experienced industry participant knows, TPA agreements have limitations within their terms that control the exercise of authority delegated, which means the delegating entity still exercises judgment, both in choosing the delegatee and in some instances by retaining the ultimate decision on certain claims.

Award

Based on a majority of the Panel's findings of fact above, the Panel hereby orders the following:
1. Within 30 days of the date of this Final Award, Respondent is hereby ordered to pay Petitioner $337,034 plus pre-award interest at the rate of 9% per annum from the date 30 days after the date of each unpaid bill until the principal amount is paid.
2. The restriction on the drawing upon the Letter of Credit posted by Respondent pursuant to the Panel's June 25, 2017 Ruling is hereby lifted.
3. All other requests for relief are denied.
4. Upon issuance of this Final Award, the parties are entitled to resume *ex parte* communication with their party arbitrators.
5. The Panel shall remain constituted and retain jurisdiction over this arbitration proceeding until such time as any amounts due identified herein are finally quantified.

ENTERED THIS 12th DAY OF JULY, 2018

_____
Paul E. Dassenko

_____
David A. Thirkill

_____
Paul C. Thomson, III, Dissenting

3